ISAAC VANIEWSKY, RESPONDENT, v. DEMAREST BROTH-ERS COMPANY, A NEW JERSEY CORPORATION, AND JOHN DOTSON, APPELLANT.

Submitted January 25, 1929—Decided December 19, 1929.

Before Justices Trenchard, Kalisch and Lloyd.

For the appellant, *Harley, Cox & Walburg.*

For the respondent, *Seufert & Elmore.*

The opinion of the court was delivered by

Lloyd, J.   This action was brought by Isaac Vaniewsky to recover for the damage done to a building owned by him in the borough of Closter by a truck of the defendant company running into and knocking down a portion of the walls; the truck at the time being operated by John Dotson, president of Demarest Brothers Company, and one of the defendants.   The allegation of negligence was that "said defendant John Dotson, and said defendant Demarest Brothers Company, by its agent and servant John Dotson, did carelessly and negligently drive said truck at a high, dangerous and excessive rate of speed without having proper control thereof, without having the same in proper repair and without giving heed or attention to the manner of its driving and without using proper precautions with respect to property lawfully located on said highway."

The plaintiff's proofs simply established that the truck ran over the sidewalk and into the building and that at the time it was being driven by the defendant Dotson.

At the conclusion of plaintiff's proofs, motions for nonsuit were made on behalf of both defendants.   These motions were refused.   Defendant Dotson then testified that he was president of the company, that he was driving the truck at the time and that he lost consciousness, in consequence of which he did not know what thereafter occurred.   This comprises the whole of the testimony as to negligence.

At the conclusion of the entire case a motion was made for the direction of a verdict in favor of both defendants on the grounds that there was no proof of negligence and no proof of any negligent acts which were the proximate cause of the accident; as to the defendant Dotson that there was no proof of the allegation set forth in the complaints and as to both defendants that the proofs showed that the accident was unavoidable. The court granted the motion as to Dotson, denied it as to Demarest Brothers Company, and thereupon awarded a judgment in favor of the plaintiff against that company for the amount of the plaintiff's damages.

It will be observed that the whole negligence, if any, alleged or proved in the case was in the operation of the truck by Dotson as the agent of the Demarest Brothers Company. It is, therefore, entirely apparent that no liability could exist as to the company unless by and through the negligence of Dotson.

The case was heard by the judge sitting without a jury and we therefore have the anomalous situation of the judge sitting as a jury finding as a fact that no negligence existed in the case and yet rendering a verdict for the plaintiff against one of the defendants. With what show of logic or reason such a result could have been reached we are unable to discover.

From the rulings of the judge directing a verdict for the defendant Dotson, the plaintiff does not appeal. The Demarest Brothers Company appeals from the judgment rendered against it.

The question here involved was discussed by Mr. Justice Katzenbach in the case of *Dunbaden* v. *Castle's Ice Cream Co.,* 103 *N. J. L.* 427, though in that case the precise point did not arise. That action was against master and servant with a verdict against the master only, but with no finding by the jury as to the servant. It was therefore said that the case as against the servant remained yet undetermined. To like effect was *Fury* v. *Reid Ice Cream Co.,* 2 *N. J. Mis. R.* 1008.

These cases, however, are far from controlling here. What

different juries may do in different cases or possibly in the same case on different trials is by no means analogous to the case where, as here, the action is one against both defendants in which a single complaint is filed alleging the negligence of the driver as the basis of liability against both driver and master, and a verdict is rendered at one and the same time exonerating the servant and holding the master. In the case of *New Orleans and Northwestern Railroad Co.* v. *Jopes,* 142 *U. S. Sup. Ct.* 18, it was said by that high tribunal that "it would seem on general principles that if the party who actually causes the injury is free from all civil and criminal liability, therefore, his employer must also be entitled to a like immunity." In practice the great weight of authority is as stated in 39 *C. J.* 1367, that "where a master and servant are sued jointly in an action based solely on tortious conduct of the servant, and the servant is acquitted, there can be no verdict against the master. A verdict against the master and acquitting the servant is equivalent to a finding that no cause of action exists and will not support a judgment against the master; and such a verdict should be set aside or judgment for the master entered notwithstanding the verdict," citing a long line of cases, beginning with the case above noted, and continuing with like rulings in numerous states.

The liability of the servant is primarily due to his wrongful act; that of the master is derivative and predicated wholly upon such primary liability. Courts are for the administration of justice; it is their duty so to administer the law as to effectuate justice within the bounds of adjudicated rules. By implication the judge in the present case found that there was no negligence; none in the servant because it acquitted him of all responsibility, and by implication, therefore, none in the master because such negligence could only exist if the servant had been guilty. It would be a travesty on justice if courts were powerless to set aside a result so illogical and unjust.

If it be suggested that the plaintiff should not suffer because of the wrongful action of the judge, the answer is that he

could have himself appealed from the finding in favor of Dotson.. A finding which deprives him of the benefit of the liability of the servant, on which alone the liability of the master could be predicated, and a similar finding that such master was nevertheless liable could certainly be brought before this court for review upon the same logical principles that we are now invoking on the legal phases of the case as they are here presented. If he neglects to avail himself of the means to protect his rights he cannot complain of the final result which deprives him of all remedy.

The judgment is set aside and judgment rendered for the defendant Demarest Brothers Company.

KALISCH, J. (dissenting). I find myself unable to concur in the views expressed in the prevailing opinion of the court. The ground of my dissent, stated as succinctly as is practicable, is predicated chiefly upon the uncontroverted fact, as disclosed by the evidence, that the relation of master and servant did not exist between Dotson, in whose favor the trial judge gave judgment, and the Demarest Brothers Company, a corporation, against which company judgment was awarded. Dotson was not the servant of this company, but was its president, and at the time of the happening of the accident, he was engaged in the execution of an agency in the conduct of the affairs of his company, by driving one of its trucks on behalf of, and for the benefit of the company's business. In performing such service he was the *alter ego* of the company and not its servant.

The doctrine of *respondeat superior,* therefore, invoked by the learned author of the prevailing opinion is obviously inapplicable to a situation where the wrong-doer is the principal, as is the case here. The state of demand filed by the plaintiff, in the District Court, sets forth in the first count thereof, in addition to the allegation of negligent operation of the truck, the further allegation that the truck was being operated "without having the same in proper repair."

It has been repeatedly held by the decisions of this court, that pleadings in the District Court need not be as formal as

they are required to be in the higher courts. The fact that the state of demand alleges Dotson to be the agent and servant of the defendant company was a matter of cautious pleading to meet either a relationship of master and servant, or that of principal and agent, as might be developed by the testimony.

Even if this were a case in which the relation of master and servant existed between the defendants, the fact that the truck jumped the curb, crossed the sidewalk and ran into the front of the building, raised the presumption of negligent driving, or that the truck was out of repair, or both.

The testimony adduced in the cause most strongly supports the judgment against the appellant company. That the accident occurred in the manner as stated is admitted. The only defense offered and relied on by the defendants, was that the accident was inevitable. The conceded facts in the case, *prima facie* established a trespass *quare clausum fregit*. The front of the truck had entered the front of the building, of which the plaintiff was the owner.

The burden rested upon the defendants to satisfactorily explain, in order to exonerate themselves from liability, to adduce proof of such facts and circumstances as would constitute a legal excuse for the damage done. One of the allegations in the plaintiff's state of demand is, as has been stated, that the truck was out of repair. There is not a scintilla of testimony offered by the defendants, to be found anywhere in the case that meets the plaintiff's allegation that the truck of the defendant-appellant was out of repair, by a denial from either of them.

No attempt was made by the defendant company to show the truck was in good repair. The truck was in the custody of, and under the control of, the defendants at the time of the accident. It surely was incumbent upon them to explain the circumstance, why the truck jumped the curb and went over the sidewalk and struck, and entered the building of the plaintiff.

The defendants relied solely upon the assertion of Dotson, who was operating the truck, that by reason of an attack of acute indigestion, he lost consciousness, and therefore was unable to state how the accident happened.

There is an utter absence of proof at what point, at any time, during the journey, Dotson became unconscious. Whether his illness began just at the moment when the truck jumped the curb, and was crossing the sidewalk, which naked circumstance would raise a permissible inference, in the absence of any explanation that the truck was out of repair; or whether Dotson became unconscious when he was made aware of his peril after the truck jumped the curb; or whether he was rendered senseless by force of the impact of the truck with the building, is not disclosed by the testimony; at any rate, they were factual questions for the trial judge to determine. It seems to me to be clear that under the evidence the trial judge was warranted in finding from the circumstance that the truck jumped the curb, that such abnormal movement was due to the truck being out of repair, and was not the result of negligent operation of it, by Dotson. As this was a permissible view that the trial judge could take under the evidence, he was warranted in exculpating Dotson of negligent conduct, and in finding the defendant company to have been negligent for permitting its truck, when out of repair, to be operated upon a public highway.

The foregoing views are based upon the theory adopted in the prevailing opinion, that the case is one of master and servant, to which the doctrine of *respondeat superior* is strictly applicable; but even upon that theory there is no incongruity in finding the servant not guilty, and holding the master liable, under the allegation in the state of demand, that the truck was out of repair.

In *Goekel* v. *Erie Railroad Co.*, 100 *N. J. L.* 279, Chancellor Walker, who wrote the opinion for the Court of Errors and Appeals, in a headnote to the opinion, says: "Although two defendants are sued as for a joint tort, yet if the jury negative the negligence charged against one, a verdict against the other is not objectionable; but whether so in a case where *respondeat superior* applies and the master is responsible for the particular act of negligence of the servant, where both or neither would be liable, *quære*."

In *Dunbaden* v. *Castles Ice Cream Co.* (*Court of Errors and Appeals*), 103 *N. J. L.* 427, the late Mr. Justice Katzenbach, speaking for the court, at page 429, after discussing the rule of *respondeat superior* in a case of master and servant, as adopted in some jurisdictions, said: "In other jurisdictions it has been held that in an action against master and servant jointly, based solely upon the doctrine of *respondeat superior,* the master may be held liable, although the servant is exonerated. The reason assigned for this rule is that the plaintiff is entitled to the verdict given him by the jury, and for the failure of the plaintiff in obtaining a verdict against another equally responsible, the plaintiff may have a grievance, but the defendant adjudged responsible has none." The learned justice cites in support of this statement leading cases in some of our sister states.

Upon the assumption that the instant case is one of master and servant, to which the rule of *respondeat superior* applies, the important fact cannot be ignored, that counsel of defendants, appearing for both master and servant moved the judge to exonerate Dotson, which request was granted. He also moved to exonerate the master, which request was refused. We have therefore the rather peculiar situation of a master appealing from a judgment against him, because the trial judge did not also give a judgment against his servant, though it was at the request of the master's counsel that the servant was exonerated.

It is difficult for me to comprehend that even if in the finding of the trial judge, that the servant was not guilty, and the master guilty, there is a palpable incongruity under the doctrine of *respondeat superior*. I am unable to perceive how, and in what respect, the master was injuriously affected by the acquittal of the servant, since there was testimony from which the trial judge could properly find that the damage done to the plaintiff was the result of negligence, for which the master was answerable, as well as the servant.

Moreover, section 27 of the new Practice act provides: "No judgment shall be reversed or new trial granted on the

ground of misdirection, or the improper admission or exclusion of evidence or for error as to matter of pleading or procedure, unless after examination of the whole case, it shall appear that the error injuriously affected the substantial rights of a party." *Pamph. L.* 1912, *p.* 382.

I am decidedly of the opinion that the facts in the instant case do not present the relationship of master and servant, but rather that of principal and agent—the agency, however, being of a higher type than such as is usually to be found in the ordinary relation of principal and agent. While it is true, that the doctrine of *respondeat superior* is recognized by distinguished authors of text books on the subject in hand, and by the decisions of our courts, to be applicable to the relation of principal and agent upon the grounds of public policy, it seems, however, that the application of that doctrine is limited to where the agency is of such a nature as has super-imposed upon it the relation of master and servant.

In *American Soda Fountain Co.* v. *Stolzenbach,* 75 *N. J. L.* 721, Judge Dill, speaking for the Court of Errors and Appeals (at *p.* 726), says: "The fallacy of the argument of the defendant in error is, that it fails to note the distinction between a corporate act performed through the intermediation of a person specially empowered to act as its agent or its attorney, and a like act done immediately by the corporation through its own administrative officers, its inherent agencies. The right of an artificial person to empower and employ agents or attorneys is identical wtih that of a natural person —each is governed alike by the law of principal and agent."

"The fundamental difference between the natural and artificial person is that the latter, even when not acting as a principal through the intermediation of an agent, acts through some agency inherent in its corporate form."

"Normally such agency inheres in the natural person who holds and administers the offices of the corporation. * * * Hence, when a corporation does not go outside of its corporate machinery and capacity in doing a corporate act, it is a confusion of terms and ideas to say that it is acting through

an agent, when the fact is, that it is acting through an agency, and in chief."

"This distinction is not merely verbal, and hence trivial, but, on the contrary, marks the wide difference that exists between acting for oneself by an inherent faculty and the employment of another person to act for one and in one's stead."

"In this, as in all cases, loose terminology implies and conduces to loose reasoning. The maxim *'qui facit per alium facit per se'* requires and should be applied only when the agent the *alius* is not the principal acting for himself."

In the instant case the defendant corporation was operating its business through its president. He had been driving the truck for years as part of the business of the corporation. Upon his redirect examination he testified that he was one of the firm of Demarest Brothers, that it was a corporation, and he its president.

It is a matter of some significance, that the trial judge, in giving judgment, said: "There will be a judgment entered in favor of the defendant as to Mr. John Dotson, *individually,* and a judgment will be entered in favor of the plaintiff against the defendant, Demarest Brothers Company, a corporation, for $363.95."

It is a matter of proper conjecture that the trial judge, in view of the fact that Dotson was the president of the corporation, and that a trespass had been committed by Dotson while in the execution of an agency of the company, and he being the *alter ego* of the company, his act became, and was the act of the corporation. It also becomes evident that the liability of the corporation cannot be properly designated as a derivative liability, resulting from the tortious act of Dotson, as would have been the case if the relation of master and servant had existed between him and his company, for such liability rests wholly upon the basis that the act of Dotson was the tortious act of the company.

As has already been pointed out, the trial judge was warranted to find from the facts of the case that the trespass com-

plained of, was the result of the truck being out of repair, and not due to any negligent operation of it by Dotson. It was not necessary for the plaintiff to establish that there was negligence in the operation of the truck by Dotson. Even if the trial judge gave credence to Dotson's statement that he became unconscious while operating the truck, that in itself does not furnish a legal excuse.

The action being one of trespass, it was wholly unimportant that the trespass was or was not the result of negligence, or that the perpetrator lacked the intent to commit the trespass, or was in a state of unconsciousness at the time of its commission. *Delaware, Lackawanna and Western Railroad Co.* v. *Reich,* 63 *N. J. L.* 635, and *Friedman* v. *Snare & Triest Co.,* 71 *Id.* 605, both cases being decided by our Court of Errors and Appeals, and are authority for the proposition that an infant, though of an age so as not to comprehend that in going upon the land of another, it is committing a wrong, nevertheless, it is in law a trespasser.

If a somnambulist, while in a somnambulistic state, should wander from home and go into his neighbor's garden and uproot rose bushes or commits other acts of destructiveness in law, he is guilty of a trespass, and answearble for damages, but, if, while in the act of despoliation he shoots and kills a person he is not guilty of murder, because his act lacked the essential element of intent, in order to constitute a crime. So, if a lunatic enters a neighbor's close without leave or license, he is a trespasser, and liable to the land owner in a civil action, for any damage committed by him.

I do not think it is necessary to pursue the discussion any further, since under the evidence, it was also open to the trial judge to find that the accident was not an inevitable or unavoidable one, and that the defendant company was answerable for the trespass and damages resulting therefrom, to the plaintiff. I therefore vote to affirm the judgment of the court below.